**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

In re:                                                                    Case No. 26-13819-SMG

**RAYAN DAZA,**                                                    Chapter 7
     Debtor.

_____/

**JAMES H. WEAREN and**
**MOSES J. WIGGINS,**
each an individual,

     Plaintiffs,

vs.                                                                        Adv. Pro. No. _____

**RAYAN DAZA, an individual,**

     Defendant.

_____/

## ADVERSARY COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT

Plaintiffs, JAMES H. WEAREN and MOSES J. WIGGINS, each an individual, by and through undersigned counsel, sue Defendant, RAYAN DAZA, an individual and the debtor in the above-styled chapter 7 proceeding, and allege:

### Jurisdiction and Venue

1.      This is an adversary proceeding brought pursuant to Rule 7001(6) of the Federal Rules of Bankruptcy Procedure to determine the dischargeability of a particular debt under 11 U.S.C. §523(a)(2)(A).

2.      This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157 and §1334, and the General Order of Reference of the United States District Court for the Southern District of Florida.

3.      This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(I), and Plaintiffs consent to the entry of final orders or judgment by this Court pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1409(a) as this adversary proceeding arises in and is related to *In re Rayan Daza*, Case No. 26-13819-SMG (Bankr. S.D. Fla.), a chapter 7 case currently pending in this Court.

## Allegations as to Parties

5.      At all times material hereto, Plaintiffs, JAMES H. WEAREN and MOSES J. WIGGINS (Mr. Wearen and Mr. Wiggins), were *sui juris* and residents of Miami-Dade County, Florida.

6.      At all times material hereto, Defendant, RAYAN DAZA (Mr. Daza or Defendant), was *sui juris* and a resident of Broward County, Florida.

7.      Mr. Daza is the debtor in the above-captioned chapter 7 proceeding, having filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code on March 27, 2026.

8.      At all times material hereto, Mr. Daza was the sole owner, president, manager and control person of X Auto Import and Export Corp., a Florida Corporation (Dealership), and maintained complete authority and control over the Dealership to the extent that the Dealership was the alter ego and mere instrumentality of Mr. Daza.

## General Allegations

### The Underlying Action

9.      On August 23, 2023, Mr. Wearen and Mr. Wiggins filed a Complaint for Damages and Incidental Relief against the Dealership, Mr. Daza, and CFS of South Florida, L.L.C. in the

United States District Court for the Southern District of Florida, styled *Wearen, et al. v. X Auto Import and Export Corp., et al.*, Case No. 23-CV-23223-RAR (the Underlying Action).

10. The Underlying Action arose from the sale by the Dealership and Mr. Daza to Mr. Wearen and Mr. Wiggins of a 2014 GMC Acadia, VIN ending in 2700 (the Subject Vehicle), with a tampered odometer.

11. Mr. Daza was duly served with the Summons and Complaint in the Underlying Action on August 24, 2023 [ECF No. 5].

12. On October 31, 2023, the Underlying Action was compelled to arbitration upon the joint application of the Dealership and Mr. Daza [ECF No. 29] over the objection of the Plaintiffs.

13. Notwithstanding having fought hard to compel arbitration, Mr. Daza failed to proceed with arbitration proceedings.

14. On June 6, 2024, the District Court entered an Order to Show Cause [ECF No. 61] directing Mr. Daza to explain, by June 25, 2024, why he had failed to proceed with arbitration.

15. Mr. Daza did not respond to the Order to Show Cause.

16. On July 17, 2024, the Clerk of the District Court entered a default against Mr. Daza [ECF No. 69].

17. On September 16, 2024, the District Court entered an Order Granting Plaintiffs' Motion for Default Final Judgment [ECF No. 80] (the Default Order), and entered a separate Final Default Judgment in favor of Mr. Wearen and Mr. Wiggins and against Mr. Daza in the total sum of $38,375.84 [ECF No. 81] (the Final Judgment).

18. The Final Judgment remains unsatisfied as of the petition date and constitutes a debt owed by Mr. Daza to Mr. Wearen and Mr. Wiggins within the meaning of 11 U.S.C. §101(12).

19. True and correct copies of the Complaint, the Default Order, and the Final Judgment from the Underlying Action are attached hereto and incorporated herein by reference as Exhibit "A."

### The Sale of the Subject Vehicle

20. On or about February 21, 2023, Mr. Wearen and Mr. Wiggins visited the place of business of the Dealership for the purpose of selecting a used motor vehicle to be used for personal, family and household purposes.

21. After brief negotiations, Mr. Wearen and Mr. Wiggins selected the Subject Vehicle.

22. At the time Mr. Wearen and Mr. Wiggins selected the Subject Vehicle, Defendant, both in writing and orally, represented to Mr. Wearen and Mr. Wiggins that the odometer reading for the Subject Vehicle was 90,986 miles (the Mileage Representation).

23. As finances were tight, the decision of Mr. Wearen and Mr. Wiggins to purchase the Subject Vehicle was made in reliance on the Mileage Representation, given that lower mileage vehicles tend to need less maintenance than higher mileage vehicles.

24. In the belief that they had purchased reliable transportation at a reasonable value, Mr. Wearen and Mr. Wiggins executed and delivered a document entitled Retail Installment Sales Contract (the RISC), pursuant to which Mr. Wearen and Mr. Wiggins agreed to pay the sum of $11,451.45 as and for the purchase price of the Subject Vehicle, financed over 44 monthly installments at an annual percentage rate of 26.00%, for a total of payments of $17,668.20.

25. The Mileage Representation appears in writing on the face of the RISC, in the box denoted Odometer Mileage, as 90986.

### Discovery of the Mileage Rollback

26.     Shortly after purchasing the Subject Vehicle, Mr. Wearen and Mr. Wiggins became concerned with the mechanical condition of the Subject Vehicle, which was not consistent with the mechanical condition of a vehicle with 90,986 miles.

27.     Mr. Wearen and Mr. Wiggins, through counsel, obtained a copy of the title history (the Title History) for the Subject Vehicle from the State of Florida, Department of Highway Safety and Motor Vehicles.

28.     The Title History reveals that on or about January 14, 2022, Bomnin Chevrolet Dadeland transferred the Subject Vehicle to The Auto Warehouse, with a certified actual mileage of 190,937 miles.

29.     The Title History further reveals that on or about January 28, 2022, The Auto Warehouse transferred the Subject Vehicle to the Dealership, with a certified actual mileage of 190,937 miles.

30.     The reassignment of title from The Auto Warehouse to the Dealership was executed by Mr. Daza, personally, as purchaser on behalf of the Dealership.

31.     By executing the reassignment, Mr. Daza personally acknowledged that the actual mileage of the Subject Vehicle at the time of acquisition by the Dealership was 190,937 miles.

32.     On or about February 21, 2023, the Dealership transferred the Subject Vehicle to Mr. Wearen and Mr. Wiggins. The Dealership submitted to the Florida Department of Highway Safety and Motor Vehicles a title reassignment (the Title Application) reflecting an odometer reading of 90,986 miles.

33.     The reassignment of title from the Dealership to Mr. Wearen and Mr. Wiggins was executed by Mr. Daza, personally, as seller/agent on behalf of the Dealership.

34.     As is evident from the face of the Title History, the odometer of the Subject Vehicle was rolled back by 99,951 miles  -  from 190,937 miles to 90,986 miles  -  during the period that the Subject Vehicle was in the exclusive care, custody and control of the Dealership and Mr. Daza.

35.     Mr. Daza, on behalf of the Dealership, also caused an X to be inserted in the box of the Title Application that indicated that the mileage disclosed is not the actual mileage, in order to feign compliance with the requirements of the federal and state odometer acts in the event the Department of Highway Safety and Motor Vehicles or Mr. Wearen and Mr. Wiggins discovered the actual mileage and the misconduct of Mr. Daza and the Dealership at a later time.

36.     Mr. Wearen and Mr. Wiggins, however, were never advised of the disclosure on the Title Application that the mileage is not the actual mileage, were never provided with a copy of the Title Application at the time of the sale, and reasonably relied on the written and oral Mileage Representation made by Defendant at the time of the sale.

37.     Upon information and belief, the tampering with odometers, and the sale of vehicles with tampered odometers, is a regular business practice of Mr. Daza and the Dealership.

### The Underlying Action and the Final Judgment

39.     Count I of the Complaint in the Underlying Action stated a cause of action against Mr. Daza for violation of the Federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. §32710 *et seq.* (the Odometer Act), based on the foregoing odometer tampering.

40.     A private cause of action under the Odometer Act requires proof that the defendant acted with intent to defraud. 49 U.S.C. §32710(a).

41.     By virtue of the Default Order, the District Court determined that the well-pleaded factual allegations of the Complaint in the Underlying Action were deemed admitted by Mr. Daza, including the allegations that:

a.    Mr. Daza personally executed the title transfer when the Dealership acquired the Subject Vehicle from The Auto Warehouse with a certified actual mileage of 190,937 miles;

b.    Mr. Daza personally executed the title reassignment when the Dealership sold the Subject Vehicle to Mr. Wearen and Mr. Wiggins with a represented mileage of 90,986 miles;

c.    The odometer of the Subject Vehicle was tampered with, or replaced, by Mr. Daza on the Dealership's behalf, while in the exclusive care, custody and control of the Dealership;

d.    Mr. Daza conspired with the Dealership to violate the Odometer Act with intent to defraud;

e.    Mr. Daza violated the Odometer Act with the intent to defraud; and

f.    The tampering with odometers and the sale of vehicles with tampered odometers is a regular business practice of Mr. Daza and the Dealership.

42.    On the basis of the deemed-admitted allegations, the District Court determined in the Default Order that the Complaint adequately alleges a claim for violation of the Federal Motor Vehicle Information and Cost Savings Act, 49 U.S.C. §32710 *et seq.* and entered the Final Judgment in favor of Mr. Wearen and Mr. Wiggins and against Mr. Daza in the total sum of $38,375.84, comprised of $10,000 in statutory damages, $27,040 in attorney's fees, and $1,335.84 in costs.

43.    Mr. Daza did not appeal the Default Order or the Final Judgment, and the time to do so has expired.

44.     All conditions precedent to the institution of this adversary proceeding have occurred or have otherwise been waived.

45.     Mr. Wearen and Mr. Wiggins have retained the undersigned law firm and have obligated themselves to pay a reasonable fee for its services.

**COUNT I**

**DETERMINATION OF NONDISCHARGEABILITY OF DEBT**

46.     This is a count for the determination of the nondischargeability of a debt under 11 U.S.C. §523(a)(2)(A).

47.     Mr. Wearen and Mr. Wiggins reallege and reaffirm the allegations contained in Paragraphs 1 through 45 above as if set forth hereat in full.

48.     Pursuant to 11 U.S.C. §523(a)(2)(A), a discharge under §727 of title 11 of the United States Code does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud.

49.     As more particularly described above, Defendant made the Mileage Representation to Mr. Wearen and Mr. Wiggins, both in writing on the face of the RISC and orally at the place of business of the Dealership, that the odometer reading for the Subject Vehicle was 90,986 miles.

50.     The Mileage Representation was false at the time it was made.

51.     The actual mileage of the Subject Vehicle, as reflected by the immediately preceding two reassignments of title, was no less than 190,937 miles.

52.     Defendant knew that the Mileage Representation was false at the time it was made, having personally executed, only thirteen months earlier, the title reassignment by which the Dealership acquired the Subject Vehicle at a certified actual mileage of 190,937 miles.

Page 8 of 12

53.     Defendant made the Mileage Representation with the intent to deceive Mr. Wearen and Mr. Wiggins, and with the intent to induce Mr. Wearen and Mr. Wiggins to purchase the Subject Vehicle and to enter into the RISC.

54.     Defendant's intent to defraud is further evidenced by Defendant's personal execution of the Title Application, in which Defendant caused the Subject Vehicle to be transferred to Mr. Wearen and Mr. Wiggins at a stated mileage of 90,986 miles, notwithstanding Defendant's personal knowledge that the actual mileage was no less than 190,937 miles.

55.     Mr. Wearen and Mr. Wiggins justifiably relied on the Mileage Representation in deciding to purchase the Subject Vehicle and to enter into the RISC.

56.     The reliance of Mr. Wearen and Mr. Wiggins on the Mileage Representation was justifiable in that the Mileage Representation appeared in writing on the face of the RISC, was made by an apparently licensed Florida motor vehicle dealer, and was consistent with the odometer of the Subject Vehicle, which had been physically rolled back from 190,937 miles to 90,986 miles by Defendant or those acting at Defendant's direction.

57.     Had Mr. Wearen and Mr. Wiggins been aware of the true mileage of the Subject Vehicle, they would not have purchased the Subject Vehicle and would not have entered into the RISC.

58.     As a direct and proximate result of the false Mileage Representation, Mr. Wearen and Mr. Wiggins suffered damages, including, but not limited to, the diminution in value of the Subject Vehicle, increased maintenance and repair costs associated with a vehicle of substantially higher mileage, and the financing costs incurred under the RISC.

59.     The damages suffered by Mr. Wearen and Mr. Wiggins were liquidated by the District Court in the Final Judgment in the total sum of $38,375.84, comprised of $10,000 in statutory damages under the Odometer Act, $27,040 in attorney's fees, and $1,335.84 in costs.

60.     The entirety of the debt evidenced by the Final Judgment, including the awards of statutory damages, attorney's fees, costs, and post-judgment interest accruing pursuant to 28 U.S.C. §1961, is nondischargeable under 11 U.S.C. §523(a)(2)(A).

61.     The deemed-admitted factual allegations of the Complaint in the Underlying Action, together with the Default Order entered after Defendant's substantial participation in the Underlying Action - including, *inter alia*, Defendant's motion to compel arbitration, the entry of an order compelling arbitration, Defendant's subsequent failure to proceed with the arbitration he himself sought, and Defendant's failure to respond to the Order to Show Cause - establish each element of a claim for nondischargeability under 11 U.S.C. §523(a)(2)(A).

**WHEREFORE**, Plaintiffs, JAMES H. WEAREN and MOSES J. WIGGINS, each an individual, demand entry of a final judgment against Defendant, RAYAN DAZA: (a) determining that the debt evidenced by the Final Judgment, including all statutory damages, attorney's fees, costs and post-judgment interest, is excepted from discharge pursuant to 11 U.S.C. §523(a)(2)(A); (b) awarding Plaintiffs their attorney's fees and costs incurred in this adversary proceeding pursuant to 49 U.S.C. §32710(b); and (c) granting such other and further relief as this Court deems just and proper.

Dated: May 16, 2026.

Respectfully Submitted,

**SUE YOUR DEALER**
1930 Harrison Street, Suite 208 F

Hollywood, FL 33020
Telephone: (954) 228-5674
Facsimile: (954) 697-0357
Email: Josh@Sueyourdealer.com

By: /s/ Joshua Feygin

Joshua Feygin, Esq.
Florida Bar No. 124685
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the date set forth above, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will provide notice of electronic filing to all parties of record. I FURTHER CERTIFY that a true and correct copy of the foregoing, together with the summons issued in this adversary proceeding, will be served upon the Defendant and the Defendant's counsel of record in the underlying chapter 7 case in accordance with Rule 7004 of the Federal Rules of Bankruptcy Procedure as follows:

Rayan Daza
2951 Carambola Circle South
Coconut Creek, FL 33066
*(Defendant)*

Samir Masri, Esq.
901 Ponce de Leon Boulevard, Suite 101
Coral Gables, FL 33134
masrilaw@aol.com
*(Counsel for Defendant in Chapter 7 Case)*

Kenneth A. Welt, Chapter 7 Trustee
4581 Weston Road, Suite 355
Weston, FL 33331
*(via CM/ECF)*

Office of the United States Trustee
51 S.W. 1st Avenue, Suite 1204
Miami, FL 33130
*(via CM/ECF)*

By: /s/ Joshua Feygin

Joshua Feygin, Esq.
Florida Bar No. 124685